IN THE
UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

RECEIVED

2007 AUG 31   A 9: 22

ALLAN A. PETERSEN,
      Movant/Petitioner,

vs.

WARDEN OF FEDERAL PRISON CAMP,
DARLENE DREW, WARDEN,
_____Defendant/Respondent._____/

D.C. CRIM. No.# 1995/0073-01
D.C. CIV. No.# 1998/0066
DIRECT APPEAL No.# 96-7477
28 USC § 2244/3rd Cir. No.# 07-1430

CIVIL HABEAS No.# 2:07 cv 785-MEF

### TITLE 28 U.S.C. § 2241 HABEAS CORPUS
### PETITION AND MEMORANDUM OF LAW FOR RELIEF

COMES NOW, Petitioner/Movant, Allan A. Petersen, in pro-se, who respectfully moves this Honorable Court to extend relief by writ of habeas corpus because Petitioner is held in custody in violation of the Sixth Amendment Constitutional Right and the Fifth Amendment Constitutional Right.

### JURISDICTION/POWER TO GRANT § 2241 WRIT

(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district court and any district judge within their respective jurisdictions. The order of a circuit judge shall be entered in the records of the district court of the district wherein the restraint complained of is had....

(c) The writ of habeas corpus shall not extend to a prisoner unless ....

(3) He is in custody in violation of the Constitution or laws or treaties of the United States ... Id. Brown v. Lundren, 528 F.2d 1050, cert. den. (1976) 429 U.S. 917, 50 L.Ed.2d 283, 97 S.Ct. 308; Alexander v. Megerman, 563 F.Supp. 737 (1983).

Under federal habeas corpus statute (28 USCS § 2241) federal courts have been granted power to provide relief for state and federal prisoners held in custody in violation of federal constitution, treaties or laws, and those powers were broadly designed so that they would sweep aside procedural constraints, jurisdictional limitations and resistant courts and release a prisoner unjustly constrained. Codispi v. Howard, 589 F.2d 135 (1978). Federal courts are authorized to grant relief to a prisoner in custody where there is a clear showing of a deprivation of his Constitutional Right that rendered

the judgment void. <u>Odell v. Hudspeth</u>, 189 F.2d 300, cert. den. (1951) 342 U.S. 873,

96 L.Ed.656, 72 S.Ct. 116; <u>Rogers v. Peck</u>, 199 U.S. 425, 50 L.Ed. 256, S.Ct. 87 (1905)

## FIFTH AND SIXTH AMENDMENT CONSTITUTIONAL RIGHT REQUIREMENT

The Fifth Amendment Constitutional Right provides in part:

> "NO PERSON SHALL BE HELD TO ANSWER FOR A CAPITAL, OR OTHERWISE INFAMOUS
> CRIME, UNLESS ON A PRESENTMENT OR INDICTMENT OF A GRAND JURY ... NOR
> BE DEPRIVED OF LIFE, LIBERTY, OR PROPERTY, WITHOUT DUE PROCESS OF LAW..."Id.

The Sixth Amendment Constitutional Right provides in part:

> "IN ALL CRIMINAL PROSECUTIONS, HE ACCUSED SHALL ENJOY THE RIGHT, ... TO
> A SPEEDY AND PUBLIC TRIAL BY AN IMPARTIAL JURY ... TO BE CONFRONTED WITH
> THE WITNESS AGAINST HIM, TO HAVE COMPULSORY PROCESS FOR OBTAINING WITNESS
> IN HIS FAVOR, AND TO HAVE THE ASSISTANCE OF COUNSEL FOR HIS DEFENSE." Id.

## REASON FOR RELIEF TO BE GRANTED

The evidence in this case by trial transcript will show convincingly that the

prosecutions' witness at trial deliberately remained in court during the testimony of

all other witnesses of the Government and the defense, (**knowingly to the presiding Judge**

**and the prosecuting attorneys and defense attorneys**), in violation of the Rule of

Sequestration and was called as a witness to testify against Plaintiff by the government

in court, without objection by any attorney(s) or the court in violation of Petitioner's

Fifth and Sixth Amendment Rights to have a fair trial in court. Thus, Petitioner was

deprived of his due process rights, and his Sixth Amendment to assistance of counsel(s)

during trial and on direct appeal. See: <u>Spicer v. Warden of Roxbury Correctional</u>

<u>Institute</u>, 31 F.Supp.2d 509 (D. Md. 1998)(**Defense counsel's failure to object to the**

**prosecutions violation of the sequestration rule where witness remained in court, after**

**explained of rule by Court and called as a witness after hearing testimony of others,**

**constitute ineffective assistance of counsel**). See also, <u>Hollines v. Estelle</u>, 569 F.Supp.

146 (W.D. Texas 1983); <u>Lufkins v. Solem</u>, 716 F.2d 532 (8th Cir. 1983).

## I. FACTS AND PROCEDURAL HISTORY

On February 10, 1995, the United States Customs Service ("Customs") at the Cyril E. King Airport on St. Thomas seized twenty-four kilograms of cocaine from a suitcase owned by Jennifer Lynch ("Lynch") who was on her way to Atlanta, Georgia. Lynch was arrested pursuant to a warrant when she arrived in Atlanta, Georgia. Also, Melvin Marvin Thomas ("Thomas") was arrested in Atlanta, Georgia when he arrived at Lynch's hotel room. See: extent of detail in case number/name: <u>United States v. Thomas</u>, 114 F.3d 403 (3rd Cir. 1997)(**Reversal of Judgment of conspiracy on acquittal for lack of evidence**).

The Grand Jury on March 16, 1995, indicted Plaintiff Allan A. Petersen, along with Jennifer Lynch, and Melvin Marvin Thomas, in the district of the Virgin Islands, and Atlanta, Georgia to knowingly and intentionally conspire together to possess with intent to distribute cocaine, a Schedule II narcotic controlled substance, in violation of Title 21, United States Code, Section 846, as Count One.(**See: Attachment (1).**). Lynch entered into a Plea Agreement to testify with the Government against Petitioner and Thomas at trial. (**See: Attachment (2).**). A superceeding Indictment was manifested by the presiding judge during trial unlawfully that removed Lynch's name, where Petitioner and Melvin Marvin Thomas alone was tried together in court. (**See: Attachment (3).**). Petitioner and "Thomas" was tried together in court in December of 1995, and was only found guilty of the conspiracy count, whereas, a mistrial was rendered as to the second and third counts which were [Possession of cocaine] and [Intent on importing cocaine into the U.S].(**See: Attachment (4).**). Plaintiff appealed after trial to the Third Circuit Court of Appeals by the assistance of counsel [Michael Joseph] who after several sanctions imposed by the Court for not filing the appeal brief, voluntarily dismissed Petitioner's direct appeal, in favor of § 2255 motion to file for ineffective assistance of counsel claims, which was never done by counsel, but instead by Plaintiff, under case no.# 1998/0066 in the District Court of the Virgin Islands in St. Thomas.

The claims were all based upon ineffective assistance of counsel(s) on the issues of representaion at trial, and on direct appeal. However, a evidentiary hearing was

3.

held in 2003, on the Island of St. Croix District Court before Judge Raymond L. Finch, who on November 24, 2003, denied the relief claiming that both counsels on direct appeal and at trial rendered effective assistance of counsel. (See: Attachment (5).).

Thereafter, Plaintiff filed a appeal to the Third Circuit Court of Appeals on the issues and was also denied by the affirmation of judgment, denying certificate of appealability also, and rehearing en banc. Plaintiff thereafter filed a §2244 requesting permission to file a second successive § 2255 motion on the issues which were also denied. (See: Attachment (6).).

The District Court has held that, "When a federal prisoner claims that conduct for which he is being held is no longer criminal, where motion under 28 USC § 2255 is unavailable, such remedy is inadequate or ineffective to test the legality of the prisoner's detention, thereby allowing recourse to habeas corpus petition under 28 USC § 2241."Lee v. Wetzel, 49 F.Supp.2d 875, (1999, ED. La) vacated on other grounds, remanded (2001, CA5 La) 244 F.3d 370.

## ARGUMENT AND EVIDENCE

II. **EVIDENCE WILL SHOW COUNSELS FOR THE DEFENSE AND THE PROSECUTION, AS WELL AS THE DISTRICT COURT JUDGE KNEW THE GOVERNMENT"S WITNESS WAS EXPLAINED OF THE RULE OF THE SEQUESTRATION, BUT CHOSED TO REMAIN IN COURT HEARING THE TESTIMONY OF ALL WITNESSES AND WAS CALLED AS A WITNESS FOR THE GOVERNMENT WITHOUT ANY OBJECTION BY ANY COUNSELS IN COURT DENYING PLAINTIFF OF HIS DUE PROCESS RIGHT, AND SIXTH AMENDMENT CONSTITUTIONAL RIGHT TO COUNSEL AND TO HAVE A FAIR TRIAL IN COURT.**

At the beginning of Petitioner's trial, the district court judge instructed the Custom agent (Elizabeth Dubois) on the rule of Sequestration in the presence of the prosecuting Attorney Mark Patterson:

THE COURT: All Right. Will you proceed, then?
MR. PATTERSON: Yes, your Honor. We would call Rod Bergstrom (witness sworn).
MR. THOMAS: We'll invoke the rule of sequestration, also, if there are other witnesses the government intends to have testify.
THE COURT: Any other witnesses in court?
MR. PATTERSON: One other, your Honor.
THE COURT: All right.
MR. PATTERSON: Yes, your Honor, I've explained the rule to him.
THE COURT: All right. And any other witnesses you see come in, instruct them. The government is to monitor their witnesses and make sure they're not here in the courtroom

4.

when they're not supposed to be. You may proceed. Go ahead. **Ma'am, what that means, if you're likely to testify, the rule is that someone who is going to testify in a case cannot be in court and hear what other people are saying. That's the rule. Just so you understand. Thank you. (Witnesses sequestered). See:** (Joint Appendix Volume 1, at 015-016, pages 8-9)**(Exhibit A)**.

After the Court instructed agent Dubois on the Rule, she remained in court for the testimony of all other witnesses including Agent Bergstrom, which she admitted to in court when she was on the stand under cross-examination:

BY MR. SMITH:
CROSS EXAMINATION OF AGENT ELIZABETH DUBOIS:
THE COURT: Go ahead.
Q. Agent Dubois, were you present in the courtroom during Agent Bergstrom's testimony?
A. Yes, I was.
See: (Joint Appendix Volume II at 436, page 18)**(Exhibit B)**.

At all times during the course of the trial, the District Court judge reminded everyone in attentance in court that the rule of sequestration was still in effect:

THE COURT: Okay, Thank you. So again, the Rule require that each witness testify without having heard what an earlier witness said, that's why witnesses are excused, sequestered, as we call it. (Witnesses sequestered).
See: (Joint Appendix Volume I at 136, page 112)**(Exhibit C)**.

The transcript records will also show that, agent Elizabeth Dubois, was also present in court during the testimony of the government witness: [Jennifer Lynch] sitting next to prosecuting attorney Mark Patterson:

CROSS EXAMINATION OF JENNIFER LYNCH:
BY MR. FRANCIS:
Q. Now did you speak to Custom agent **Ms. Elizabeth Dubois, the young lady sitting right next to Mr. Patterson?** Did you speak to her?
A. About what?
Q. Did you speak to her about this case?
A. Yes.
See: (Joint Appendix Volume II at 346, page 91)**(Exhibit D)**.

However, despite the defense counsel of Plaintiff name (Leonard B. Francis) knew of the presence of Elizabeth Dubois sitting in court during the testimony of all other witnesses, he remained silent when she was called as witness to testify for the Government as well as the judge and all other counsels without any objections.

The Citations of the transcript records are taken from the Joint Appendixes filed in co-defendant Thomas' appeal case No.# 96-7476 in the Third Circuit Court of Appeals.

all of them, I don't know. **But she was here, agent Dubois was here, I assume, I think during virtually all of his testimony.**

See: (Joint Appendix Volume II at 435, page 180)(**Exhibit F**).

Thus, because the Judge and the prosecution attorney fully knew of the presence of Elizabeth Dubois remaining in court during the testimony of all other witnesses, even after the rule was explained to her, and then called as a witness for the government to testify without any objection or action taken by the Court or counsel(s). Outstandingly show that favorable treatment was given to the prosecution witness contigent upon the sucess of the prosecution case by her testimony which underminded the integrity of the conviction in this case, and tainted it beyond a reasonable doubt. See: United States v. Waterman, 732 F.2d 1527 (8th Cir. 1984); and the Sixth Amendment Constitutional Right violation: Spicer v. Warden of Roxbury Corr. Inst., 31 F.Supp.2d 509 (D. Md. 1998). There can be no doubt that Petitioner's trial was unconstitutional and unfair with the presence of the government's witness hearing the testimony of all other witnesses, and then called as a witness to testify for the government, even after she was instructed by the Court on the rule of sequestration. The conviction of this case therefore is void for the trial was unfair by the actions of the case. Moreover, it is clear from the above cases that a Sixth Amendment violation happened in this case where counsels rendered ineffective assistance of counsel by not objecting to the witness when called, after she remained in court, and furthermore, not raise it on direct appeal when the opportunity was there for it seeing the records substanciates the violation clearly.

Therefore, because the Court of Appeals for the Third Circuit have consistently denied leave to file a second or successive 28 USC § 2255 motion on this issue, the remedy [IS] inadequate and ineffective to test the legality of Petitioner's detention, for recourse to 28 USC § 2241. Based upon the evidence put forth herein, the writ pursuant to § 2241 should be granted in light of justice, since a fundamental miscarriage of justice have happened in this case, which was secretly and cleverly done to ensure the benefit of a conviction into this case unjustly.

7.

## SECOND REASON FOR RELIEF TO BE GRANTED

The 28 USC § 2241 remedy is available for when a prisoner claims that conduct for which he is being held is no longer criminal in nature by law, and where 28 USC § 2255 is unavailable due to the fact, the issue is not based upon newly discovered evidence, but instead the Constitutional law that decriminalizes a offense or charge or crime when one is acquitted of it by the courts of law.

In this case at bar, Petitioner was tried with only one co-conspirator by indictment who's name was Melvin Marvin Thomas. See: (Attachment 3)(Joint Appendix Volume III, at 764, page 237) which states in full as to Count One:   THE COURT/JURY CHARGE:

> "This indictment charges, as you've heard, in Count 1, that: 'On or before February 10, 1995, at St. Thomas and at Atlanta, Georgia, and elsewhere, **these two defendants, Allan Petersen and Melvin Marvin Thomas,** knowingly and intentionally conspired with one another, and with others known and unknown to the grand jury, to possess with intent to distribute cocaine, a controlled substance, in violation of Federal Law." Id.

(Attachment 3.).

However, on Melvin Marvin Thomas' direct appeal, he was acquitted of the alleged conspiracy offense which claimed that Petitioner and him conspired together at trial by indictment. See: <u>United States v. Thomas</u>, 114 F.3d 403 (3rd Cir. 1997). Moreover, the 5th Circuit Court of Appeals, and many other Circuits and Supreme Court have held that, "Existance of coconspirator is not only element of conspiracy, but also essence of crime and thus, in a single trial, if the indictment names two people as only coconspirators and one person is acquitted, no crime can have been committed." See: <u>Pearson</u>, 667 F.2d at 12-13 (1982)(citing Espinosa-Cerpa, 630 F.2d 328 (5th Cir. 1980). Where the conviction of one co-conspirator is reversed on appeal, the other alleged conspirator's conviction must be vacated as law. See: <u>Bates v. United States</u>, 323 U.S. 15, 65 S.Ct. 15, 89 L.Ed. 13 (1944); <u>Morrison v. California</u>, 291 US 82, 92, 54 S.Ct. 281, 285, 78 L.Ed. 664 (1934); <u>Hartzel v. United States</u>, 322 US 680, 64 S.Ct. 1233, 88 L.Ed. 1534 (1944); <u>United States v. Fox</u>, 130 F.2d 56 (3d Cir. 1942); <u>Lubin v. United States</u>, 313 F.2d 419 (9th Cir. 1963); and <u>Romonto v. United States</u>, 400 F.2d 618 (10th Cir. 1968).  Thus, at all times, Petitioner has stressed and claimed his innocence in this case, which is why he is still before the court after 12 years of

incarceration in federal prison.

The law of the Third Circuit Court of appeals have stressed that, a conspiracy requires agreement between at least <u>two people</u> to the illegal object of the conspiracy. <u>United States v. Molt</u>, 615 F.2d 141 (3d Cir. 1980). In that case, the conviction of the conspiracy was reversed because there was insufficient evidence of the other alleged co-conspirator's knowledge. A person cannot conspire with himself, at least two conspirators must have sufficient knowledge in order for there to be a conspiracy. See <u>Davis</u>, 183 F.3d at 244. Thus, the evidence in this case did not prove that Petitioner and Melvin Marvin Thomas, conspired together as alleged by the indictment at trial of the two on Count One before the jury. Therefore, since Thomas is acquitted of the conspiracy offense, Petitioner cannot conspire by himself and thus, no crime is committed for the indictment only named two defendants at trial on it.

Based upon the foregoing facts and evidence of this case, Petitioner prays the Court will grant the Writ to correct the miscarriage of justice by voiding the judgment and conviction in this case, and having Petitioner release from custody of the Bureau of Prisons to return to his children and family.


Respectfully submitted this 28th day of August 2007.

*Allan A. Petersen*

Mr. Allan A. Petersen  03533-094
Federal Prison Camp Montgomery,
Maxwell Air Force Base,
Montgomery, Alabama 36112.


## CERTIFICATE OF SERVICE:

I, Allan A. Petersen, declare under the penalty of perjury that the foregoing is true and correct, and that I have served by mail this Title 28 USC 2241 habeas corpus Memorandum and Application petition to the district court at the address listed below with the attached exhibits and transcripts of trial records in support of the claims in this case for relief respectfully, this 30th day of August, 2007, by mail Service.

*Allan A. Petersen*

Mr. Allan A. Petersen 03533-094          United States District Court
Federal Prison Camp Montgomery,           For The Middle District of Alabama
Maxwell Air Force Base,                   Frank M. Johnson, Jr., Federal Building,
Montgomery, Alabama 36112.                U.S. Courthouse, One Church Street,
                                      9.  P.O.Box 711, Montgomery, Alabama 36101.



Allan Petersen #08533-0094
Federal Prison Camp Mont
Maxwell Air Force Base,
Montgomeay, Alabama 36112

Clerk of The Court
U.S. District Court For
Middle District of Al
Frank M. Johnson, Jr. Fed
Building, U.S. Courthouse
One Church Street,
P.O. Box 711, Alabama
Montgomery,

IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | INDICTMENT |
| Plaintiff, | ) | CRIMINAL NO. 95-95 |
| -v- | ) | 21 U.S.C. §846; |
| JENNIFER C. LYNCH, | ) | 21 U.S.C. §841(a)(1); |
| MELVIN MARVIN THOMAS and | ) | 21 U.S.C. §952(a), 963; |
| ALLAN A. PETERSEN, | ) | 18 U.S.C. §2 |
| | ) | 18 U.S.C. §924(c)(1) |
| Defendants. | ) | |

CONSPIRACY, POSSESSION WITH INTENT TO DISTRIBUTE COCAINE; ATTEMPTED IMPORTATION OF COCAINE; AIDING & ABETTING; and POSSESSION OF A FIREARM DURING A DRUG TRAFFICKING CRIME

The Grand Jury Charges that:

COUNT I

On or about February 3, 1995 to February 10, 1995, at St. Thomas, in the District of the Virgin Islands, at Atlanta, in the Northern District of Georgia and elsewhere, the defendants,

JENNIFER C. LYNCH,

MELVIN MARVIN THOMAS, and

ALLAN A. PETERSEN,

did knowingly and intentionally conspire confederate and agree together, with each other and with other persons to the grand jury known and unknown, to commit the following offense against the United States, that is, to knowingly and intentionally possess with intent to distribute cocaine, a Schedule II narcotic controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

In violation of Title 21, United States Code, Section 846.

**ATTACHMENT 1**

**ATTACHMENT 2**

DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

UNITED STATES OF AMERICA, )
     Plaintiff, )
     v. )     CRIMINAL NO. 95-73
JENNIFER C. LYNCH, )
     Defendant. )

_RECEIVED
95 JUL 20 PM 4:0?
CLERK OF THE COURT
ST. THOMAS, V.I_

_____

<u>PLEA AGREEMENT</u>

    The United States of America, by W. Ronald Jennings, United States Attorney for the District of the Virgin Islands, and Jennifer Lynch, defendant, and Stephen Brusch, Assistant Federal Public Defender, attorney for the defendant, pursuant to Fed. R. Crim. P. 11(e)(2), gives notice of the plea agreement that has been reached by the parties.

**The Plea**

    The defendant will unconditionally plead guilty to Count One of the Indictment which charges the crime of Conspiracy to Possess Cocaine with Intent to Distribute, in violation of Title 21, United States Code, Sections 846.

**The Maximum Penalties**

    The maximum sentence on count one is:

    (a) Not more than life imprisonment with a mandatory minimum sentence of ten (10) years imprisonment;

    (b) Fine of $4 million;

    (c) Special Assessment of $50.00; and

    (d) Supervised release of five (5) years.

**ATTACHMENT 2**

<u>United States v. Jennifer Lynch</u>,
Criminal Number 95-73

## Elements of the Crime

There are two essential elements for the crime charged in count one:

One:    That the defendant entered into, formed or reached an agreement or understanding with another person to possess with intent to distribute cocaine;

Two:    That at some time during the existence or life of the conspiracy, agreement or understanding, the defendant knew the purpose of the agreement and then deliberately joined t h e conspiracy, agreement or understanding.

## The Plea Agreement

The plea agreement has been made pursuant to Fed. R. Crim. P. 11(e)(A) and (B), the plea agreement is as follows:

A.   The defendant will unconditionally plead guilty to Count one of the Indictment;

B.   The defendant will persist in that plea through sentencing.

C.   The defendant understands that the court is not bound by the sentencing recommendations of any of the parties, and that the defendant has no right to withdraw the guilty plea if the court decides not to accept any of the sentencing recommendations set forth in this plea agreement.

2

12

United States v. Jennifer Lynch
Criminal Number 95-73

D.   The defendant agrees to cooperate fully with the
government.  The defendant understands and agrees
that complete and truthful cooperation is a material
condition of this agreement.  Cooperation shall
include providing all information known to the
defendant regarding any criminal activity,
including but not limited to the offenses for which
the defendant was charged.  Cooperation will also
include complying with all reasonable instructions
from the government, submitting to interviews by
investigators and attorneys for the government at
such reasonable times and places to be determined
by counsel for the government, and to testify fully
and truthfully before any grand juries or at any
trials where the defendant's testimony is deemed by
the government to be relevant.

E.   In the event the defendant provides substantial
assistance to the United States, the government
will file a motion, pursuant to U.S.S.G. §3553(e),
or Fed. R. Crim. P. 35(b), for downward departure
from the applicable sentencing guidelines ranges
and the statutory minimum term of imprisonment.
The assessment of the quality of the defendant's
assistance, if any, shall be solely within the

3

13

United States v. Jennifer Lynch
Criminal Number 95-73

discretion of the United States Attorney. The government's failure to file a motion for a downward departure shall not constitute grounds for withdrawal of the defendant's guilty plea. Assistance can include the providing of information that provides a substantial evidentiary link in the investigation and prosecution of others involved in illegal drug activities.

F. As of the date of this agreement, the defendant has demonstrated a recognition and affirmative acceptance of personal responsibility for the offense for which she is pleading guilty, and therefore qualifies for the three-point offense level reduction set forth in Section 3E1.1 of the Sentencing Guidelines.

G. The government will not prosecute the defendant for any other criminal offense based on the transactions contained in the indictment.

H. The government expressly reserves all of the government's appellate rights pursuant to Title 18, United States Code, Section 3742.

I. The defendant agrees to provide all financial and other information as may be requested by the United States Probation Department for its use in

4

14

United States v. Jennifer Lynch
Criminal Number 95-73

preparing a presentence report. Failure to execute releases or to provide such financial and/or other information as may be required by the Probation Department shall constitute a violation of the terms of this agreement and may subject the defendant to an enhancement under Guideline § 3C1.1, or provide grounds for an upward departure under Guideline §5K2.0, but shall not constitute grounds for the defendant to withdraw his guilty plea.

J.    The parties agree that no other promises have been made in connection with this matter, and that this plea agreement constitutes the entire agreement between the United States Attorney for the District of the Virgin Islands and the defendant in the above-referenced case.    This agreement does not bind any other person nor is it intended to encompass any civil or administrative proceedings

5

15

United States v. Jennifer Lynch
Criminal Number 95-73

that are pending or that may be brought against the

defendant in this or any other judicial district.

Respectfully submitted,

W. RONALD JENNINGS
UNITED STATES ATTORNEY

Dated: 4/4/95

Robert E. Goldman, First
Assistant United States Attorney

Dated: March 4, 1995

By:  Nelson L. Jones
Assistant United States Attorney

Dated: 4-21-95

STEPHEN BRUSCH
Attorney for Defendant

Dated: 4-21-95

JENNIFER LYNCH
Defendant

6

16

237

1    and give each accused here the benefit of a reasonable

2    doubt, both regarding the evidence presented or

3    regarding the lack of evidence, you reach a conclusion

4    after that that either or both defendant is guilty,

5    then you must declare or you should declare so by your

6    verdict.

7         In assisting you in reaching this

8    determination, your judgment in this case, let me now

9    instruct you on the elements of these four offenses.  I

10   will also define for you and discuss with you certain

11   of the terms used in the indictment, again, all of

12   which must be proved by the government beyond a reason-

13   able doubt.

14        This indictment charges, as you've heard, in

15   Count 1, that:

16        "On or before from February 3, 1995, to

17        February 10, 1995, at St. Thomas and at

18        Atlanta, Georgia, and elsewhere, these two

19        defendants, Allan Petersen and Melvin Marvin

20        Thomas, knowingly and intentionally conspired

21        with one another, and with others known and

22        unknown to the grand jury, to possess with

23        intent to distribute cocaine, a controlled

24        substance, in violation of Federal Law."

25        Count 2 of the indictment charges that:

761

17

97

1    tell me anything about what substantial steps do they

2    allege that this defendant has taken elsewhere and in

3    the Virgin Islands.

4              The government's discovery materials as they

5    relate to the defendant, Melvin Thomas, only relate to

6    the Northern District of Georgia, only; there is

7    nothing about the Virgin Islands and nothing about

8    elsewhere.

9              And this is a very far- and wide-reaching

10   indictment in terms of the geographics, and I think

11   we're entitled to be able to defend against those

12   things.

13             THE COURT:  This indictment has not been

14   superseded?

15             MR. PATTERSON:  No, your Honor, it has not.

16             THE COURT:  The date is March 16th; that's the

17   one?

18             MR. PATTERSON:  Yes, your Honor.

19

20                    RULING OF THE COURT

21

22             THE COURT:  Well, there's a, obviously, a

23   tension between the way the federal government handles

24   discovery and pleadings and notice and the ability of

25   the defendant to be able to meet the charges to defend

104

18

238

1        "On or about February 10, 1995, at St.

2   Thomas and at Atlanta, Georgia, and elsewhere,

3   the defendant, Allan Petersen, did knowingly

4   and intentionally possess with intent to

5   distribute a quantity of cocaine, a controlled

6   substance, in violation of Federal Law."

7   Count 3 of the indictment charges that:

8        "On or about February 10, 1995, here in

9   St. Thomas and at Atlanta, Georgia, and

10  elsewhere, Mr. Petersen did attempt to import

11  into Atlanta, Georgia, a quantity of cocaine,

12  a controlled substance, in violation of

13  Federal Law."

14  Finally, Count 4 of the indictment charges

15  that:

16       "On or about February 10, 1995, at St.

17  Thomas and at Atlanta, Georgia, and elsewhere,

18  the defendant, Melvin Marvin Thomas, did

19  knowingly carry a firearm during and in

20  relation to a drug trafficking crime, that is,

21  possession of cocaine with intent to

22  distribute, in violation of Federal Law."

23  Now, you notice as the case is now presented

24  to you it's only Count 1 that has both defendants

25  charged.  Count 2 and 3 are only against Mr. Petersen.

765

19

ORDER, 3d SERIES

following language under the heading "Advice of Penalties and Sanctions":

The commission of any offense while on pretrial release may result in an additional sentence upon conviction for such offense to a term of imprisonment of not less than two years nor more than ten years, if the offense is a felony; or a term of imprisonment of not less than ninety days nor more or. This sentence shall be consecutive to any other sentence and must be imposed in addition to the sentence received for the offense itself.

plemental Joint Appendix at 18. It is ontested that, at the time of his release, is signed the Release Order thereby indig his awareness of the conditions.

e conclude that the district court erred matter of law in finding that the Release r failed to adequately warn Davis of the quences of committing a federal crime on bail. Davis's contention that the ssive language in the first sentence—mission of any offense while on pretrial e may result in an additional sentence conviction"—failed to indicate the man- nature of the enhancement pursuant J.S.C. § 3147 is without merit. Read- admonition as a whole—including the entence which indicates that such an ement "shall be consecutive to any entence and must be imposed in addi- the sentence received for the of- it is plain that commission of a crime release will result in an enhanced See United States v. Vazquez, 113 , 390 (2d Cir.1997). In short, Davis's ization of the warning as being in int" and expressed in "dense legal " Appellant's Reply Brief at 6, is persuasive.[1]

contention that the warning in the rder is inadequate because it fails ce 18 U.S.C. § 3147 explicitly is ailing. The defendant was in- the penalties to which he was ler § 3147 at the time of his re- dicated his awareness of the pen-

provided adequate notice to the de- the repercussions of committing a ne while on release, we need not uestion.

alties by signing the document. Under these circumstances, the Release Order's failure to specifically reference the statutory provision is immaterial. *See United States v. Smitherman,* 889 F.2d 189, 192 (8th Cir.1989).

[2] Finally, Davis argues that the imposition of a sentence enhancement pursuant to 18 U.S.C. § 3147 is impermissible because he ultimately was acquitted of tampering with motor vehicle identification numbers, the crime for which the initial conditions of release were imposed. In brief, the defendant contends that the acquittal of the underlying charges stripped the district court of jurisdiction to enhance a sentence for any subsequent crime committed while on release. This argument fundamentally misunderstands the import of 18 U.S.C. § 3147. The statute is concerned solely with whether a person released on bail in connection with a federal criminal charge takes action in violation of federal law while on pretrial release. By its terms, the statute regulates the conduct of individuals deemed fit for pretrial release during their time under judicial supervision. In this instance, the defendant was indicted for conduct committed while under such supervision; accordingly, whether he ultimately was acquitted of the charge giving rise to the initial provision of bail is irrelevant.

## III.   CONCLUSION

For the foregoing reasons, we vacate the sentence imposed by the district court and remand to permit the court to impose the three-level enhancement pursuant to 18 U.S.C. § 3147 and U.S.S.G. § 2J1.7. By summary order entered today, however, we affirm the defendant's conviction.



**UNITED STATES of America,**

v.

**Melvin Marvin THOMAS, Melvin Thomas, Appellant.**

No. 96–7476.

United States Court of Appeals, Third Circuit.

Argued April 7, 1997.

Decided May 29, 1997.

Following jury trial, defendant was convicted in the United States District Court of the Virgin Islands, Thomas K. Moore, J., of conspiracy to possess cocaine with intent to distribute, and defendant appealed. The Court of Appeals, Becker, Circuit Judge, held that conviction was not supported by evidence, absent evidence that defendant knew that specific object of conspiracy was object charged in indictment.

Reversed with direction.

**1. Criminal Law** ⏥1144.13(3), 1159.2(5)

In reviewing claim that evidence presented at trial was insufficient to sustain conviction, Court of Appeals must determine whether there is substantial evidence, when viewed in light most favorable to government, to support jury's verdict.

**2. Conspiracy** ⏥47(2)

Elements of conspiracy may be proven entirely by circumstantial evidence, but each element must be proven beyond reasonable doubt.

**3. Conspiracy** ⏥47(12)

Conviction for conspiracy to possess cocaine with intent to distribute was not supported by evidence, even if defendant knew that his act of following another's instructions to go to hotel room in which suitcase containing cocaine would have been located, but for intervention of federal agents, and unlock door of room somehow involved illicit activity, absent evidence that defendant knew that purpose of agreement was specific unlawful purpose charged in indictment, name-

**404**          **114 FEDERAL REPORTER, 3d SERIES**

ly, possession of controlled substance with intent to distribute.

**4. Conspiracy ⊜24(1)**

One element that must be proven by government beyond reasonable doubt in conspiracy case is that alleged conspirators shared unity of purpose, intent to achieve common goal, and agreement to work together toward goal.

———————————

Alan D. Smith (argued), Hodge & Francois, Charlotte Amalie, St. Thomas, U.S. VI, for Appellant.

James A. Hurd, Jr., United States Attorney, Mark Patterson (argued), Assistant United States Attorney, Charlotte Amalie, St. Thomas, U.S. VI, for Appellee.

Before: BECKER, ROTH, and WEIS, Circuit Judges.

## OPINION OF THE COURT

BECKER, Circuit Judge.

This is an appeal by Melvin Thomas from a judgment in a criminal case following a jury verdict of guilty on the charge of conspiracy to possess cocaine with intent to distribute, 21 U.S.C. § 846.[1] Because the evidence adduced at trial was insufficient to support the verdict, we will reverse.[2]

### I.

On the morning of February 10, 1995, the United States Customs Service at the Cyril E. King airport on St. Thomas seized twenty-four kilograms of cocaine from a suitcase checked to Atlanta, Georgia. The officials identified the owner of the bag as Jennifer

Lynch, whose plane had already departed for Atlanta. Customs officials on St. Thomas notified officials in Atlanta, and they arrested Lynch pursuant to a warrant when she arrived there. Lynch agreed to cooperate. She informed the agents that one Allan Petersen had directed her to take the suitcase carrying the cocaine to Atlanta, check into a room at the Atlanta Airport Days Inn, call him at a Virgin Islands telephone number, leave the bag with the cocaine in the room, return the key to the front desk in an envelope for "Melvin Smith" or "Cousin Melvin Smith," leave the Days Inn, check into another hotel for the night, and return to St. Thomas the following day.

Along with agents, Lynch checked into room 510 of the Airport Days Inn. Monitored by the agents, Lynch placed a phone call to the designated telephone number. She informed the agents that she had spoken to Petersen and given him the hotel room number. An envelope containing the room key was then left at the front desk for "Cousin Melvin Smith." Customs officials also left an empty suitcase in room 510 and set up surveillance directly across the hall in room 509.

In due course, Thomas entered room 510. The officers observed him and arrested him when he exited the room a few minutes later. They took from Thomas a 9mm pistol registered to him, a pager, a cellular phone, a Virgin Islands driver's license, the envelope with "Cousin Melvin Smith" written on it, and the room key. They retrieved from the pager the same telephone number at which Lynch had called Petersen from the hotel room. Thomas agreed to answer questions. He told the agents that he went to the room because a person named Cliff had offered

him $500.00 to check on a bag at [...] but that he knew nothing about [...] deal. Petersen's phone records s [...] eral calls to the pager and cell [...] carried by Thomas on the day of [...] and to Thomas' home phone.

Thomas was tried in the Distri [...] the Virgin Islands, together with [...] Lynch, who had pled guilty to the [...] count prior to trial, testified, on be [...] government, that Petersen had [...] pay her to take the cocaine to Atl [...] ing the facts described above. She [...] fied that she did not know Thoma[s] [...] not conspired with him to posse[ss] [...] with intent to distribute. Peterse[n] [...] stand in his own defense. He te [...] that he did not know Thomas, a [...] had not conspired with him to [...] caine with intent to distribute.

Thomas then took the stand, a [...] as follows. On the morning of hi[s] [...] received a phone call from "Cliff, [...] did not know. Cliff informed Tho[mas] [...] had obtained Thomas' telepho[ne] [...] from a mutual friend. Cliff aske[d] [...] he would do him a favor, and sta [...] would call later that day. Late[r] [...] Thomas received a call from his h [...] pager. He returned the call to hi[s] [...] was advised that Cliff was tryi[ng] [...] him. He told the party answer[ing] [...] Cliff contact him on his cellu[lar] [...] Shortly thereafter, his testimon[y] [...] he received a call from Cliff who [...] to go to the Airport Days Inn, as [...] desk clerk for a key left for "Co[usin] [...] Smith," go to the room, open the [...] the door without locking it, and [...] key to the front desk. Finally, Th [...] fied that he did not know eithe[r] [...] Petersen, that he had not cons [...] them to possess cocaine with in [...] tribute, and that he had no knowl [...] such scheme or conspiracy.

### II.

**[1, 2]** In reviewing Thomas' [...] that the evidence presented at t [...] sufficient to sustain his conspira[cy] [...] we must determine whether "th [...] stantial evidence, when viewed i [...]

---

1. Thomas was tried on a four-count indictment that also included charges of possession of cocaine with intent to distribute, 21 U.S.C. § 841(a)(1); attempted importation of cocaine, 21 U.S.C. § 952(a); and carrying a firearm during a drug trafficking crime, 18 U.S.C. § 924(c)(1). However, he was acquitted of all but the conspiracy count.

2. In view of this disposition, we need not address the other points raised on appeal. Principally, we do not reach Thomas' contention that the court erred when it denied Thomas' request to instruct the jury on character evidence. Thomas

has also challenged the refusal of the district court to exclude from evidence the telephone number retrieved from the pager that he had on his person at the time of his arrest, alleging that it should have been suppressed because of an unlawful search and seizure. We believe that the seizure falls within an exception to the warrant requirement as a lawful search incident to arrest. Again, we need not formally decide that issue because, even with the inclusion of that material, the evidence is insufficient to sustain the conviction.

him $500.00 to check on a bag at the hotel, but that he knew nothing about a cocaine deal. Petersen's phone records showed several calls to the pager and cellular phone carried by Thomas on the day of his arrest, and to Thomas' home phone.

Thomas was tried in the District Court of the Virgin Islands, together with Petersen. Lynch, who had pled guilty to the conspiracy count prior to trial, testified, on behalf of the government, that Petersen had offered to pay her to take the cocaine to Atlanta, relating the facts described above. She also testified that she did not know Thomas, and had not conspired with him to possess cocaine with intent to distribute. Petersen took the stand in his own defense. He too testified that he did not know Thomas, and that he had not conspired with him to possess cocaine with intent to distribute.

Thomas then took the stand, and testified as follows. On the morning of his arrest, he received a phone call from "Cliff," whom he did not know. Cliff informed Thomas that he had obtained Thomas' telephone number from a mutual friend. Cliff asked Thomas if he would do him a favor, and stated that he would call later that day. Later that day, Thomas received a call from his home on his pager. He returned the call to his home and was advised that Cliff was trying to reach him. He told the party answering to have Cliff contact him on his cellular phone. Shortly thereafter, his testimony continued, he received a call from Cliff who asked him to go to the Airport Days Inn, ask the front desk clerk for a key left for "Cousin Melvin Smith," go to the room, open the door, close the door without locking it, and return the key to the front desk. Finally, Thomas testified that he did not know either Lynch or Petersen, that he had not conspired with them to possess cocaine with intent to distribute, and that he had no knowledge of any such scheme or conspiracy.

## II.

[1, 2] In reviewing Thomas' contention that the evidence presented at trial was insufficient to sustain his conspiracy conviction, we must determine whether "there is substantial evidence, when viewed in the light most favorable to the government, to support the jury's verdict." *Government of the Virgin Islands v. Isaac,* 50 F.3d 1175, 1179 (3d Cir.1995). The elements of a conspiracy may be proven entirely by circumstantial evidence, *see United States v. Kapp,* 781 F.2d 1008, 1010 (3d Cir.1986), but each element must be proven beyond a reasonable doubt, *United States v. Samuels,* 741 F.2d 570, 573 (3d Cir.1984).

[3, 4] There can be no doubt that, when Thomas pursued his errand at the Days Inn, he knew that he was somehow involved in an illicit activity. More, however, is required to uphold a criminal conviction for conspiracy. Specifically, one of the elements that must be proven by the government beyond a reasonable doubt in a conspiracy case is that the "alleged conspirators shared a 'unity of purpose,' the intent to achieve a common goal, and an agreement to work together toward the goal." *United States v. Wexler,* 838 F.2d 88, 90–91 (3d Cir.1988) (citing *United States v. Kates,* 508 F.2d 308, 310–11 (3d Cir.1975)). We have explained that, in order to sustain a conspiracy conviction, the government must put forth " 'evidence tending to prove that defendant entered into an agreement and knew that the agreement had the specific unlawful purpose charged in the indictment.' " *Id.* at 91 (quoting *United States v. Scanzello,* 832 F.2d 18, 20 (3d Cir.1987)). While Thomas concedes that there is evidence tending to show that he entered into some kind of agreement, he contends that the evidence presented at trial is insufficient to prove beyond a reasonable doubt the essential element that he knew that the purpose of the agreement was the specific unlawful purpose charged in the indictment, i.e., the possession of a controlled substance with intent to distribute. We view the evidence in the light most favorable to the government, but are nonetheless constrained to agree with Thomas.

There is no evidence that Thomas had any prior relationship with Lynch or Petersen, or even knew them. Lynch and Petersen specifically denied knowing Thomas. Moreover, the record does not show anything about the substance of the calls made to Thomas' home, to his cellular phone, or to his pager. In-

deed, there was no evidence, apart from the fact that several phone calls were made from Petersen's home, cellular phone, and pager on the date of his arrest, that Thomas ever spoke with either Lynch or Petersen on February 10 or any time before or after that date. Nor did the government's evidence controvert what Thomas told the agents following his arrest or what he testified to about his reasons for going to the Days Inn.

The government's case depends upon the drawing of an inference from the fact and the timing of the calls made from Petersen's phone that Thomas in fact spoke to Petersen several times on February 10, 1995 and was told that drugs were in the bag at the Days Inn. Even assuming that it is permissible to infer from the evidence that Petersen was "Cliff" and that Thomas spoke to him, which is doubtful, there was no evidence concerning the substance of the phone calls. It is, therefore, speculative to conclude that Thomas knew that drugs were involved. Our conspiracy case law forbids the upholding of a conviction on the basis of such speculation.

In *Wexler, supra,* for example, where we reversed the defendant Wexler's conviction for conspiracy to distribute hashish, we held that the "inferences rising 'from keeping bad company' are not enough to convict a defendant for conspiracy." *Id.* at 91 (quoting *United States v. Cooper,* 567 F.2d 252, 254–55 (3d Cir.1977)). We noted that there was ample circumstantial evidence from which the jury could have concluded that Wexler was involved in a conspiracy to transport some kind of contraband in a Ryder truck: he drove a car in a manner that suggested that he was a lookout for the truck movement; a fictitiously obtained CB radio was in the car he drove when he was arrested; and he made a gesture consistent with signaling one of the conspirators and spoke with another several times during the course of the operation. *Id.* But what was missing, we found, "was any evidence that Wexler knew that a controlled substance was couched behind the doors of the Ryder truck. That knowledge is an essential element of the conspiracy charged. Without it the conviction must fail." *Id.* We explained that:

[i]t is more likely than not that Wexler suspected, if not actually knew, that some form of contraband was involved in the elaborate secretive arrangements for transport in which he participated. But these permissible inferences do not support a holding that the government met its burden to prove beyond a reasonable doubt that Wexler knew this was a conspiracy to transport hashish or even another controlled substance. The evidence is just as consistent, for example, with a conspiracy to transport stolen goods, an entirely different crime.

*Id.* at 92.

Similarly, in *United States v. Terselich,* 885 F.2d 1094 (3d Cir.1989), the defendant was convicted of possession of cocaine with intent to distribute and conspiracy to possess cocaine with intent to distribute. Terselich was a passenger in car that was pulled over on I–95 by the Delaware State Police. Cocaine was discovered in a secret compartment in the trunk of the car. We reversed the convictions for insufficiency of the evidence, reasoning that there was less evidence presented in that case than in *Wexler* "from which the jury could have inferred that Terselich knew of a conspiracy and that its object was to transport the illegal drugs." *Id.* at 1098. More specifically, we pointed out that the evidence that Terselich shared driving responsibilities and lodging with the driver of the car and placed his luggage in the trunk of the car along with the fact that Terselich appeared nervous when he was stopped was not enough to support the inference that Terselich knew that there was cocaine in the secret compartment in the trunk. *Id.*

Based on this case law, we conclude that, as there is no evidence from which a jury could permissibly infer that Thomas knew that the object of the conspiracy was to possess cocaine with the intent to distribute, the evidence cannot support Thomas' conspiracy conviction. We will, therefore, reverse the judgment and direct the district court to enter a judgment of acquittal.



**Attachment #4**



5.    Mr. Petersen appeared before U.S. Magistrate Judge Geoffrey W. Barnard of the District Court of the Virgin Islands, Division of St. Thomas/St. John, on February 17, 1995. The matter was continued until February 22, 1995 for a detention hearing at which time bail was set at $100,000.   On that date, Mr. Petersen was released on a $100,000 property bond.   According to his supervising pretrial services officer,  Mr. Petersen made a satisfactory adjustment while under pretrial services supervision.

6.    Mr. Petersen underwent a jury trial before the Honorable Chief District Court Judge Thomas K. Moore.  The trial began on December 4, 1995 and ended on December 7, 1995.  Mr. Petersen was found guilty on Count I.  The jury was unable to reach a verdict as to Count II and III and a mistrial was declared as to these counts.

**Codefendant(s) Information:**

7.    Melvin Marvin Thomas underwent a jury trial with Mr. Petersen and was also found guilty on Count I.   During the trial, the Court granted the government's motion to dismiss Counts II and III as they pertained to Mr. Thomas.   The jury was unable to reach a verdict on Count IV and a mistrial was declared as to this count.  He is awaiting sentencing.

8.    On December 1, 1995, in accordance with the terms of a written plea agreement, Jennifer Lynch entered a guilty plea to Count I of the Indictment, before U. S. District Court Chief Judge Thomas K. Moore.  She is awaiting sentencing.

**The Offense Conduct**

9.    **The information concerning the offense conduct was compiled from reports and other documents received from the files of the United States Attorney's Office, District of St. Thomas/St. John.   All times listed in this section are Atlantic Standard Time.**

10.   Allan A. Petersen and Jennifer C. Lynch were acquaintances, who had known each other for a number of years.  He was also the cousin of Ms. Lynch's boyfriend, who like Mr. Petersen was a firefighter with the Virgin Islands Fire Department.   During a conversation they had sometime in the past, Mr. Petersen reportedly told Ms. Lynch that she could make a lot of money transporting bags for him.  She asked him what she would be transporting and he allegedly replied "white".

11.   On December 9, 1994, Mr. Petersen contacted Ms. Lynch at the Department of Public Works where she was employed as an administrative secretary, and asked if she would

4

*24*

Attachment #5

| IN THE DISTRICT COURT OF THE VIRGIN ISLANDS |
| DIVISION OF ST. THOMAS AND ST. JOHN |

ALLAN A. PETERSEN,  ) D.C. CV. No. 1998/0066 F/C
       Petitioner,  ) 28 U.S.C. § 2255
                   )
     v.  ) Ref:  3d Cir. No. 04-3641
                   )        3d Cir. No. 03-4593
UNITED STATES OF AMERICA,  )        D.C. CR. No. 1995/0073-01
       Respondent.  )
                   )

| O R D E R |

     The relevant procedural history begins with the undersigned's November 24, 2003 memorandum opinion which found, *inter alia*, that counsel, Michael Joseph, Esq., had provided effective assistance to Petitioner on direct appeal. The Order of even date denied Petitioner's motion for relief pursuant to 28 U.S.C. § 2255 and ordered that no certificate of appealability would issue. Petitioner subsequently sought relief pursuant to Federal Rule of Civil Procedure 60(b) from the November 24th Order. Then, on August 19, 2004, the undersigned denied Petitioner's motion for Rule 60(b) relief. Petitioner appealed. This matter is now before the Court on remand from the Court of Appeals for the Third Circuit "for the sole purpose of either issuing a certificate of appealability or stating reasons why a certificate of appealability should not issue." (*Petersen v. USA*, No. 04-3641, Order of October 1, 2004.)

*Petersen v. USA*
D.C. Civ. No. 1998/0066
Order
Page 2

This Court, having duly considered the matter on remand pursuant to LAR 22.2, FED. R. APP. P. 22, and for the reasons set forth in the opinion and orders dated November 24, 2003 and August 19, 2004, hereby

ORDERS that **NO CERTIFICATE OF APPEALABILITY** shall issue.

**DONE AND SO ORDERED** this *1* day of October 2004.

FOR THE COURT:

RAYMOND L. FINCH
CHIEF JUDGE

**A T T E S T:**
Wilfredo F. Morales
Clerk of the Court

By: Deputy Clerk

Copies to:
 Hon. George W. Cannon, Jr., Esq.
 Kim L. Chisholm, Esq., AUSA
 Allan Petersen #03533-094, FPC Seymour Johnson AFB
P.O. Box 8004/Coastal-A, Goldsboro, NC 27533 - (Please Mark: "LEGAL MAIL: OPEN IN PRESENCE OF INMATE ONLY")
 Law Clerk-TLB
 Anthony Infante, Case Manager, Court of Appeals for the Third Circuit
 C. Francis
 K. Bonelli

26

Attachment #5

## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS DIVISION OF ST. THOMAS AND ST. JOHN

ALLAN A. PETERSEN,

    Petitioner,

  v.

UNITED STATES OF AMERICA,

    Respondent.

) D.C. CV. No. 1998/0066 F/C
) 28 U.S.C. § 2255
)
) Ref:  D.C. CR. No. 1995/0073-01
)     3d Cir. No. 03-4699
)
)
)

## O R D E R

On July 26, 2004, the undersigned transferred Petitioner's motion pursuant to FED. R. CIV. P. 60(b)(4)(5) for relief from the judgment entered on July 1, 1996 to the Court of Appeals for the Third Circuit pursuant to 28 U.S.C. §§ 2255 and 2244 for authorization to file. On July 28, 2004, the Court of Appeals denied Petitioner's request for a certificate of appealability. Now before the Court is Petitioner's Rule 60(b)(1)(2)(3) and (6) Motion of Federal Rules of Civil Procedure for Relief from the Judgment Entered on November 24, 2003, on the 2255 Proceeding Towards the Claim of Ineffective Assistance of Counsel on Direct Appeal ("Motion").

Petitioner argues that Michael Joseph, Esq. fraudulently represented to the Court of Appeals for the Third Circuit and also to this Court that he had reviewed the trial transcripts to determine that a direct appeal was not necessary. Petitioner takes issue with this Court's finding that:

27   153

*Petersen v. USA*
D.C. CV. No. 1998/0066
Order
Page 2

> Att'y Joseph's assistance on appeal, although dilatory,
> did not fall below an objective standard of
> reasonableness.    He thoroughly reviewed the trial
> transcript and informed Petitioner of what, in his
> professional opinion, was the proper course of action.

(Mem. Op. and Order dated Nov. 24, 2003 at 36.)    The fraud, he

contends, is evident because of a letter written by court reporter

Chandra R. Kean to Petitioner stating in relevant part as follows:

> The Transcript Purchase Order was submitted to me by
> Attorney Michael Joseph back in 96/97.  It was completed
> and forwarded to the Third Circuit, indicating that
> arrangements for payment were not made. . . .  The
> transcripts were never obtained by Attorney Joseph.

(April 20, 2004 letter by C.R. Kean.)    Petitioner also argues that

this Court erroneously "believed that the court reporter was paid

monies from the Court's financial records under the CJA-24 for the

production of transcripts which contradicts statements made by the

official court reporter in the letter dated April 20, 2004."

(Motion at 5; *see also* Mem. Op. and Order dated Nov. 24, 2003 at

37.)

Petitioner's motion must fail.    First, the November 2003

opinion denying petitioner's § 2255 motion noted Attorney Joseph's

response to the Court of Appeals' order to show cause as follows:

> After thoroughly reviewing the trial record in it's [sic]
> entirety, and having consulted with Allan D. Smith, Esq.,
> trial counsel for co-defendant Melvin Marvin Thomas (who
> has filed a[n] appeal in this Court, case no. 96-7476),
> and Leonard B. Francis, Esq., trial counsel, the
> undersigned cannot find any arguable issues which might
> result in the reversal of Appellant's conviction.
> However, the undersigned has discovered in the trial

✓ 0066

ɡood grounds for filing a motion for an
ɪry hearing pursuant to 28 U.S.C. § 2255 on
ⁿf ineffective assistance of counsel.

ᴏrder dated Nov. 24, 2003 at 33-34, Gov't Resp.-Ex.
ᴏw Cause at 1-2.)  While it is a fact that Attorney
_ the transcript, but did not pay for and receive a
from the court reporter, that does not mean that he
aud upon the courts.  The Court reporter prepared and
ᴏriginal transcript to Attorney Allan D. Smith, with
Joseph consulted, and a copy to the United States
ᴛ consulting with Attorney Smith, Attorney Joseph
says, have reviewed that transcript.  As such,
ᴇ failed to convince this Court that Attorney Joseph
ᴇd and reviewed the entire trial record.  Second, the
ᴏ reason to grant relief from judgment where, as here,
ᴏrter was indeed paid for the transcripts, only that
ɪpts were not paid on the request/CJA-24 of Attorney
ᴇstatement in the November 24, 2003 Memorandum Opinion
ᴀains true, and that is that "this Court's financial
ate that the only monies paid under the CJA were to
ᴇporter (under a CJA-24) for the production of
    (Mem. Op. and Order at 37.)

Petitioner inserts a *Blakely v. Washington*, No. 02-
1402697 (June 24, 2004) argument into his argument on

29

_ /0066

good grounds for filing a motion for an
_ry hearing pursuant to 28 U.S.C. § 2255 on
. f ineffective assistance of counsel.

Order dated Nov. 24, 2003 at 33-34, Gov't Resp.-Ex.
_ow Cause at 1-2.)  While it is a fact that Attorney
_ the transcript, but did not pay for and receive a
from the court reporter, that does not mean that he
-aud upon the courts.  The Court reporter prepared and
_riginal transcript to Attorney Allan D. Smith, with
Joseph consulted, and a copy to the United States
_ consulting with Attorney Smith, Attorney Joseph
says, have reviewed that transcript.  As such,
_ failed to convince this Court that Attorney Joseph
_d and reviewed the entire trial record.  Second, the
_ reason to grant relief from judgment where, as here,
_rter was indeed paid for the transcripts, only that
ipts were not paid on the request/CJA-24 of Attorney
_tatement in the November 24, 2003 Memorandum Opinion
_ains true, and that is that "this Court's financial
ate that the only monies paid under the CJA were to
_porter (under a CJA-24) for the production of
(Mem. Op. and Order at 37.)

Petitioner inserts a *Blakely v. Washington*, No. 02-
1402697 (June 24, 2004) argument into his argument on

29

*Petersen v. USA*
D.C. CV. No. 1998/0066
Order
Page 3

 record, good grounds for filing a motion for an
 evidentiary hearing pursuant to 28 U.S.C. § 2255 on
 grounds of ineffective assistance of counsel.

(Mem. Op. and Order dated Nov. 24, 2003 at 33-34, Gov't Resp.-Ex.

1, Resp. to Show Cause at 1-2.) While it is a fact that Attorney

Joseph ordered the transcript, but did not pay for and receive a

copy directly from the court reporter, that does not mean that he

perpetrated fraud upon the courts. The Court reporter prepared and

delivered an original transcript to Attorney Allan D. Smith, with

whom Attorney Joseph consulted, and a copy to the United States

Attorney. In consulting with Attorney Smith, Attorney Joseph

could, as he says, have reviewed that transcript. As such,

Petitioner has failed to convince this Court that Attorney Joseph

never possessed and reviewed the entire trial record. Second, the

Court finds no reason to grant relief from judgment where, as here,

the court reporter was indeed paid for the transcripts, only that

those transcripts were not paid on the request/CJA-24 of Attorney

Joseph. The statement in the November 24, 2003 Memorandum Opinion

and Order remains true, and that is that "this Court's financial

records indicate that the only monies paid under the CJA were to

the court reporter (under a CJA-24) for the production of

transcripts." (Mem. Op. and Order at 37.)

 Lastly, Petitioner inserts a *Blakely v. Washington*, No. 02-

1632, 2004 WL 1402697 (June 24, 2004) argument into his argument on

*Petersen v. USA*
D.C. CV. No. 1998/0066
Order
Page 4

Attorney Joseph's alleged fraud.    (Motion at 6-8.)    Petitioner's last attempt to raise *Blakely* claims was in his Motion for Relief from Judgment Entered on July 1, 1996 Pursuant to Federal Rules of Civil Procedure Rule 60(b)(4)(5).    The undersigned construed Petitioner's motion as an application for authorization to file a second or successive § 2255 motion to vacate, set aside, or correct sentence and transferred it to the Court of Appeals.    That Court denied Petitioner's application.    Petitioner persistently attempts to raise it again here, this time seeking the right to file a direct appeal.    Again, this Court will not consider Petitioner's *Blakely* arguments.

Having considered the premises, the Court hereby

**ORDERS** that Petitioner's Rule 60(b)(1)(2)(3) and (6) Motion of Federal Rules of Civil Procedure for Relief from the Judgment Entered on November 24, 2003, on the 2255 Proceeding Towards the Claim of Ineffective Assistance of Counsel on Direct Appeal is **DENIED**.

**DONE AND SO ORDERED** this 11 day of August 2004.

FOR THE COURT:

RAYMOND L. FINCH
CHIEF JUDGE

CERTIFIED A TRUE COPY THIS
1st DAY OF September 2004
WILFREDO F. MORALES
CLERK OF THE COURT
BY: _____
DEPUTY

*30*

*Petersen v. USA*
D.C. Civ. No. 1998/0066
Order
Page 5

A T T E S T:
Wilfredo F. Morales
Clerk of the Court

By:  Deputy Clerk

Copies to:
    Hon. George W. Cannon, Jr., Esq.
    Kim L. Chisholm, AUSA
    Allan Petersen #03533-094, FPC Seymour Johnson AFB
P.O. Box 8004/Coastal-A, Goldsboro, NC 27533 - (Please Mark:
"LEGAL MAIL: OPEN IN PRESENCE OF INMATE ONLY")
    Law Clerk-TLB
    Chandra R. Kean, RMR
    C. Francis

*31*

CHANDRA R. KEAN, RPR

OFFICIAL COURT REPORTER
DISTRICT COURT OF THE VIRGIN ISLANDS
5500 VETERANS DRIVE, STE.#310
CHARLOTTE AMALIE, USVI 00802

(809)774-9112
FAX: (809)774-1293

April 20, 2004

Allan A. Petersen 03533-094
MDC Guaynabo, Puerto Rico
P.O. Box 2147, 3 Bravo Unit
San Juan, PR 00922-2147

Dear Mr. Petersen,

I received your letter dated March 22, 2004, concerning the trial transcripts in your case.

The information you have is accurate. The Transcript Purchase Order was submitted to me by Attorney Michael Joseph back in 96/97. It was completed and forwarded to the Third Circuit, indicating that arrangements for payment were not made.

At that time, several unsuccessful attempts were made at contacting Attorney Joseph. Messages were left with his office that the transcripts he requested were ready and payment arrangements needed to be made.

The transcripts were never obtained by Attorney Joseph. They are still in my possession to date.

Sincerely,

*Chandra L. Kean*

Chandra R. Kean, RMR
Official Court Reporter

*32*

DLD-132                                                    February 23, 2007

## <u>UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT</u>

No. <u>**07-1430**</u>

IN RE: ALLAN PETERSEN,
Petitioner

Present:      BARRY, AMBRO AND FISHER, <u>Circuit Judges</u>

Submitted is petitioner's application pursuant to 28 U.S.C. § 2244 to file a
second or successive habeas corpus petition;

in the above-captioned case.

Respectfully,

Clerk

MMW/STG/je/awi

———————————————**O R D E R**———————————————

The foregoing application for authorization to file a second or successive habeas petition
is denied.  Petitioner's claims do not rest on "a new and retroactive rule of constitutional
law or new facts showing a high probability of actual innocence." <u>Gonzalez v. Crosby</u>,
545 U.S. 524 (2005); 28 U.S.C. § 2244(b).

By the Court,

<u>/s/ Thomas L. Ambro</u>
Circuit Judge

Dated: March 5, 2007
PDB/cc: Mr. Allan Petersen
          US Atty ST.

EXHIBIT A

Exhibit A

**8**

1  other defendants were added, where those particular

2  items of evidence become more relevant. We do not

3  intend to introduce them in this trial against these

4  defendants.

5       THE COURT: But if it turns out there is any

6  rebuttal or anything like that --

7       MR. PATTERSON: No, absolutely, your Honor.

8  The stipulation does not cover anything that may need

9  to be introduced in rebuttal.

10      THE COURT: All right.

11      Will you proceed, then?

12      MR. PATTERSON: Yes, your Honor. We would

13  call Rod Bergstrom.

14      (Witness sworn)

15      MR. THOMAS: We'll invoke rule of

16  sequestration, also, if there are other witnesses the

17  government intends to have testify.

18      THE COURT: Any other witnesses in the Court?

19      MR. PATTERSON: One other, your Honor.

20      THE COURT: All right.

21      MR. PATTERSON: Yes, your Honor, I've

22  explained the rule to him.

23      THE COURT: All right. And any other

24  witnesses you see come in, instruct them. The

25  government is to monitor their witnesses and make sure

015

**9**

1  they're not here in the courtroom when they're not

2  supposed to be.

3       You may proceed. Go ahead.

4       Ma'am, what that means, if you're likely to

5  testify, the rule is that someone who is going to

6  testify in a case cannot be in court and hear what

7  other people are saying. That's the rule. Just so you

8  understand. Thank you.

9       (Witnesses sequestered)

10

11      RODMAN C. BERGSTROM, JR., after having been

12  first sworn, was examined and testified as follows:

13

14             DIRECT EXAMINATION

15  BY MR. PATTERSON:

16  Q.  State your full name, please, sir, and spell your

17  last name?

18  A.  My name is Rodman, R-o-d-m-a-n, Carl Bergstrom, Jr.

19  That's spelled B-e-r-g-s-t-r-o-m.

20  Q.  How are you employed, sir?

21  A.  I'm a senior special agent, criminal investigator

22  with the U.S. Customs Service in Atlanta, Georgia.

23  Q.  You were a Customs agent on or about February the

24  10th, 1995?

25  A.  Yes, I was.

016

34

**EXHIBIT B**

E. DuBois - Cross

181

```
1    to do with this case.

2              MR. SMITH:  Fine, your Honor, I'll withdraw

3    then.  I'll withdraw.

4              THE COURT:  But you can ask her whatever is

5    appropriate.

6              (End of discussion at side bar)

7              (Open court)

8              THE COURT:  Go ahead.

9    BY MR. SMITH:

10   Q.  Agent DuBois, were you present in the courtroom

11   during Agent Bergstrom's testimony?

12   A.  Yes, I was.

13   Q.  Did you hear Agent Bergstrom testify that Jennifer

14   Lynch told him she would get $10,000 to deliver?

15   A.  I don't recall.

16   Q.  Ms. DuBois, do you have any knowledge or

17   information about whether or not any of these telephone

18   calls were ever received by Melvin Thomas?

19   A.  I don't know.

20             THE COURT:  The telephone calls you're talking

21   about are on Exhibit 25.

22             MR. SMITH:  Exhibit 25.

23             THE WITNESS:  No.

24   BY MR. SMITH:

25   Q.  Do you have any information or knowledge as to
```

436

EXHIBIT B

E. DuBois - Cross

181

1    to do with this case.

2        MR. SMITH:  Fine, your Honor, I'll withdraw

3    then.  I'll withdraw.

4        THE COURT:  But you can ask her whatever is

5    appropriate.

6        (End of discussion at side bar)

7        (Open court)

8        THE COURT:  Go ahead.

9    BY MR. SMITH:

10   Q.  Agent DuBois, were you present in the courtroom

11   during Agent Bergstrom's testimony?

12   A.  Yes, I was.

13   Q.  Did you hear Agent Bergstrom testify that Jennifer

14   Lynch told him she would get $10,000 to deliver?

15   A.  I don't recall.

16   Q.  Ms. DuBois, do you have any knowledge or

17   information about whether or not any of these telephone

18   calls were ever received by Melvin Thomas?

19   A.  I don't know.

20       THE COURT:  The telephone calls you're talking

21   about are on Exhibit 25.

22       MR. SMITH:  Exhibit 25.

23       THE WITNESS:  No.

24   BY MR. SMITH:

25   Q.  Do you have any information or knowledge as to

436

EXHIBIT C

Opening - Government

112

1    THE COURT:  All right.

2    Do any of the ladies and gentlemen of the

3    panel know Wendy O'Garro?

4    (No response)

5    THE COURT:  Okay, thank you.

6    So again, the rules require that each witness

7    testify without having heard what an earlier witness

8    said, and that's why witnesses are excused,

9    sequestered, as we call it.

10    (Witnesses sequestered)

11    THE COURT:  All right, Mr. Patterson, do you

12    want to turn the podium around?

13

14    OPENING STATEMENT BY THE GOVERNMENT

15

16    MR. PATTERSON:  May it please the Court,

17    honorable defense counsel; ladies and gentlemen of the

18    jury, good afternoon.

19    The case you're about to hear this afternoon

20    and for the next couple of days is the case of a Virgin

21    Islands drug ring, at least three members of that drug

22    ring, two members of which are on trial.  You'll hear

23    from a third member of the drug ring, also.

24    I believe that the evidence that you're going

25    to hear will reflect that at the end of the trial

136

EXHIBIT D

J. Lynch - Cross

91

1    THE WITNESS:  In the evening, yes.

2    BY MR. FRANCIS:

3    Q.  And at that point, you're saying that you did not

4    make up your mind, as you alleged, that Mr. Petersen

5    was asking you to transport bags for him?

6    A.  Yes, sir.

7         THE COURT:  You said December.

8         MR. FRANCIS:  If I said December, I'm sorry.

9    BY MR. FRANCIS:

10   Q.  It's February?

11   A.  February.

12        MR. FRANCIS:  Yes, sir.

13   BY MR. FRANCIS:

14   Q.  Now, did you speak to Customs agent, Ms. Elizabeth

15   DuBois, the young lady that is sitting right next to

16   Mr. Patterson?  Did you ever speak to her?

17   A.  About what?

18   Q.  Did you ever speak to her about this case?

19   A.  Yes.

20   Q.  Do you recall being asked a couple questions today

21   with respect to whether or not you had ever received

22   any payment for the February 10th trip that you said

23   you allegedly made for Mr. Petersen?

24   A.  Could you repeat that?

25   Q.  Do you recall indicating that you were paid $10,000

316

37

EXHIBIT D

J. Lynch - Cross

91

1      THE WITNESS:  In the evening, yes.

2   BY MR. FRANCIS:

3   Q.  And at that point, you're saying that you did not

4   make up your mind, as you alleged, that Mr. Petersen

5   was asking you to transport bags for him?

6   A.  Yes, sir.

7      THE COURT:  You said December.

8      MR. FRANCIS:  If I said December, I'm sorry.

9   BY MR. FRANCIS:

10  Q.  It's February?

11  A.  February.

12     MR. FRANCIS:  Yes, sir.

13  BY MR. FRANCIS:

14  Q.  Now, did you speak to Customs agent, Ms. Elizabeth

15  DuBois, the young lady that is sitting right next to

16  Mr. Patterson?  Did you ever speak to her?

17  A.  About what?

18  Q.  Did you ever speak to her about this case?

19  A.  Yes.

20  Q.  Do you recall being asked a couple questions today

21  with respect to whether or not you had ever received

22  any payment for the February 10th trip that you said

23  you allegedly made for Mr. Petersen?

24  A.  Could you repeat that?

25  Q.  Do you recall indicating that you were paid $10,000

316

37

EXHIBIT   E

E. DuBois - Direct

138

1    DEFENDANT THOMAS:  No, your Honor.  After we

2  broke for lunch, I think he just went for lunch.

3    THE COURT:  We'll wait a few more minutes.

4    (Pause)

5    THE COURT:  Call your witness.

6    MR. PATTERSON:  Elizabeth DuBois.

7    THE COURT:  Please raise your right hand to be

8  sworn.

9    (Witness sworn)

10    THE COURT:  Could someone let Mrs. Trotman

11  know that Mr. Smith is here?

12    MR. SMITH:  Excuse me; my apologies to the

13  Court and the jury.

14    THE COURT:  I'll talk to you later.

15    Go ahead.

16

17    THEREUPON, ELIZABETH C. DUBOIS, having been

18  duly sworn, was examined and testified as follows:

19

20    DIRECT EXAMINATION

21  BY MR. PATTERSON:

22  Q.  Would you state your full name for the record,

23  please, ma'am?

24  A.  Elizabeth C. DuBois, that's D-u-B-o-i-s.

25  Q.  How are you employed, ma'am?

393

E. DuBois - Direct

139

1  A.  I'm employed as a special agent by the U.S. Customs

2  here in St. Thomas.

3  Q.  How long have you been with U.S. Customs?

4  A.  A little over four years.

5  Q.  Can you tell us a little bit about your job duties?

6  A.  In addition to narcotics investigation, I also

7  conduct fraud investigations when it comes to Customs

8  violations.

9  Q.  And you are the case agent in the case against

10  Melvin Marvin Thomas and Allan Petersen; is that right?

11  A.  That's right.

12  Q.  And what is the case agent?

13    What does that mean?

14  A.  "Case agent" means I'm responsible for all the

15  paperwork when it comes to the case, preparing the

16  case, preparing the case file, and in addition to

17  whatever judicial duties or court duties that I have

18  that may come up as a result of the case.

19  Q.  For instance, being the one who sits in the

20  courtroom?

21  A.  That's correct.

22  Q.  You also took the lead in investigating this case

23  from the St. Thomas end; is that right?

24  A.  That's correct.

25  Q.  Now, when the cocaine was seized, how much later

394

EXHIBIT  F

E. DuBois - Cross

180

1   you're attempting to do.

2        MR. SMITH:  For instance --

3        THE COURT:  You're trying to use what Agent

4   Bergstrom says to impeach her?

5        MR. SMITH:  No.

6        THE COURT:  Or you're trying to get her to

7   impeach Agent Bergstrom?

8        MR. SMITH:  To impeach Agent Bergstrom.

9        MR. PATTERSON:  If he didn't testify to it in

10   court, your Honor, he can -- she was in court for Agent

11   Bergstrom's testimony.  If it's something that he said

12   in court, he can ask her to verify that or not, or

13   attempt to impeach it that way; but not off of his

14   report.

15        THE COURT:  I tend to agree, Attorney Smith.

16   I don't understand how this, a report that Bergstrom

17   wrote, can be used by her to impeach Bergstrom.

18        You had Bergstrom on the stand.  You cross-

19   examined him, I assume, on certain of these areas,

20   maybe all of them, I don't know.  But she was here,

21   Agent DuBois was here, I assume, I think during

22   virtually all of his testimony.

23        So, I don't understand exactly how you can use

24   what's in this report to impeach -- for her to impeach

25   him.  I mean, she probably read 20 or 30 reports having

425

IN THE UNITED STATES COURT OF APPEALS

FOR THE THIRD CIRCUIT

CASE NO. 96-7477

UNITED STATES OF AMERICA

Apellee,

v.

ALLAN A. PETERSON,

Appellant.

ON APPEAL FROM THE OPINION AND ORDER OF THE DISTRICT COURT
OF THE VIRGIN ISLANDS

DIVISION OF ST. THOMAS AND ST. JOHN

## RESPONSE TO ORDER TO SHOW CAUSE AND MOTION FOR VOLUNTARY DISMISSAL OF THE WITHIN APPEAL

COMES NOW the undersigned counsel, Michael A. Joseph, Esq., and hereby responds to this Court's Order to show cause as follows:

The undersigned was retained by Appellant for the purpose of challenging his trial attorney's performance at trial. The undersigned explained to the Appellant that a challenge to counsel's performance at trial is normally reviewed, not on direct appeal, but by collateral attack, usually after a direct appeal, and that the undersigned would review his trial record for any possible reversible error by the trial court. After thoroughly reviewing the trial record in it's entirety, and having consulted with Allan D. Smith, Esq., trial counsel for co-defendant Melvin Marvin Thomas (who has filed a appeal in this Court, case no.

*40*

96-7476),* and Leonard Francis, Esq., trial counsel, the undersigned cannot find any arguable issues which might result in the reversal of Appellants conviction. However, the undersigned has discovered in the trial record good grounds for filing a motion for an evidentiary hearing pursuant to 28 U.S.C. § 2255 on grounds of ineffective assistance of counsel.

After presentation of the Government's case and trial counsel invited to address the sufficiency of the Government case (Rule 29 motion), trial counsel for the Appellant, Mr. Leonard Francis, stated as follows:

> MR. FRANCIS:    Your Honor, I believe that there's -- considering all the facts, I do not believe that I would have, based on the evidence that has come in so far, that I would have any basis for making an argument on that motion at this time, because basically considering the facts in the light most favorable to the government, not even considering the credibility of the witnesses, all the testimony gears to a conspiracy between Jennifer Lynch and Allan Peterson.
>
> The one thing that I noticed in Count 1, however, with respect to the conspiracy and the only issue I think I can raise to the Court is whether or not that Count 1 gives sufficient factual allegations with respect to a conspiracy...
>
> THE COURT:    Just based on credibility, right?
>
> MR. FRANCIS:    That is correct, your Honor.
>
> THE COURT:    All right.

(Joint Appendix, Volume II at 514-515).

Trial counsel thus conceded that the Government had presented a legally sufficient case against Appellant. With respect to legal issues preserved for

---

* Citations of the trial record herein are taken from the Joint Appendix filed in co-defendant Thomas' appeal, case no. 96-7475.

appeal, trial counsel had but two objections, which did not go to the form of

questions. The first was an objection when the Government sought to introduce

a writing, to wit: "Cousin Melvin Smith" (co-defendant who was tried as Melvin

Thomas) on a daily planner possessed by his alleged co-conspirator, Jennifer

Lynch, as follows:

> MR. FRANCIS:    Objection at this stage, your Honor, unless and until it has been shown that, in fact, a conspiracy was in existence by a preponderance of the evidence.

> THE COURT:    Overruled.    It will be admitted.

(Joint Appendix, Volume I at 184).

Ms. Lynch later testified that Appellant wrote those particular words.

BY MR. PATTERSON:

Q. I'm going to show you what's been entered into evidence as Government's Exhibit Number 1. Can you tell me what this is?

A. this belongs to - - it's a daily planner.
   THE COURT: You said, "This belongs to me"?

THE WITNESS:    This belongs to me.

BY MR. PATTERSON:

Q. And flip to the back page there. What's written there?

A. "Cousin Melvin Smith."

Q. Who wrote that?

A. Allan Petersen.

(Joint Appendix, Volume II at 321).

The other objection was an attempt to exclude evidence that Ms. Lynch

had traveled on two previous occasions at the direction of Appellant.

42

MR. PATTERSON:   At this point, your Honor, my next series of questions will be regarding the evidence that we talked about.  It would be two prior trips that she took for Allan Petersen.

THE COURT:          All right.

MR. FRANCIS:          I would indicate my objection on the record, your Honor.

THE COURT:          All right.  And the basis for your seeking to admit this is what?

MR. PATTERSON:   To show on the 404(b), to show a plan, a course of conduct, a scheme to show intent, all of those facts.

THE COURT:          Why should that not come in, Mr. Francis?

MR. FRANCIS:          It is too prejudicial, number one, your Honor, to prejudicial, in the fact that he is charged from the conspiracy from the 3rd to the 10th, to bring in any other situations would tend to give prejudice to Mr. Petersen with respect to his similarities of acts - - not similarities, but his - - the word I'm trying to find is - -

THE COURT: Tendency?

MR. FRANCIS:          - - tendency to, in fact, do these types of situation.

In other words, these two offenses that he's talking about are technically uncharged offenses in which the government is trying to suggest that this is a course of conduct that he's been doing for years, and on that basis, that's why I state my objection.

(Joint Appendix, Volume II at 290).

The court properly denied the objection as counsel, on the face of his objection, did not show that the probative weight of the prior trips was substantially outweighed by their prejudicial effect.  Thus, there is no legal basis on this Appeal which the retained undersigned counsel could in good faith argue would require reversal.

However, the undersigned believes that trial counsel's performance at trial did not meet the requisite standard for effective assistance of counsel based on conversations with Appellant regarding the jury selection process, which issue would necessarily require a §2255 hearing. Moreover, the trial record reveals that trial counsel failed to investigate, and properly prepare for, the testimony of a FBI forensic document examiner who was offered as "an expert in the field of handwriting analysis", as follows:

> THE COURT:    Any objections?
>
> MR. FRANCIS:    No.

(Joint Appendix, Volume II at 465).

FBI Agent Haywood proceeded to testify that in his opinion the entry "Cousin Melvin Smith" in Ms. Lynch's daily planner was probably written by Appellant and that Appellant in providing handwriting exemplars engaged in deceit by trying to disguise his handwriting. Agent Haywood therefore offered for the Government an expert opinion that Ms. Lynch was in fact telling the truth and therefore cinched the Government's case against Appellant. Moreover, trial counsel did not object to an in-court request by the prosecutor that the examiner determine whether Ms. Lynch wrote the subject words "Cousin Melvin Smith".

> (Recross-examination of Agent Haywood)
>
> A. Normally I would not conduct an examination from the witness stand, your Honor. Preferably I would have the document at a location where I can have appropriate light and sufficient time to conduct a proper examination. But I just - - and I would prefer not to make a cursory finding just looking at the document from, at this point.

*44*

Q. Are there any indications of similarity or dissimilarity, though, that you see?

A. I do see variations from the "Cousin" as it appears in the questioned document. Yes, there are variations.

Q. Okay. And what about "Melvin Smith"?

A. "Melvin Smith," I also see variations in the "Melvin Smith."

THE COURT:        When you say "variations," you mean - -

THE WITNESS:    That means - -

THE COURT:        - - different than what are on the chart?

THE WITNESS:      Yes, your Honor. I see variations in the way, in the handwriting characteristics that I observed in the "Melvin Smith, Cousin" entry on the questioned document. The characteristics I see here are at variance to what I observed here.

THE COURT: All right.

MR. PATTERSON: Okay. We'll pass the witness, your Honor.

(Joint Appendix, Volume II at 492).

Trial counsel recognized the substantial damage those opinions had on Appellant's case by immediately, on recross-examination, attempted to impeach Agent Haywood.

Q. No, I'm saying that you just indicated to the other attorney on redirect examination that you don't like to normally make examinations - -

A. That is correct.

Q. - - from the witness stand?

A. That is correct.

*45*

Q. Now, you have in front of you three separate documents, one in red pen, one in a black, and there's a signature with regards to another signature of one Jennifer Lynch. Do you see those signatures?

A. Yes, I do.

Q. Were those written, in you opinion, by one and the same person?

A. Here again, I would be making a judgment on a very quick, quick glance at these documents.

   If you would ask me, I see some similarities between the signature of Jennifer, the Jennifer Lynch signature on the document.

   However, I might point out that this one document here, this guest receipt, it appears to be a photocopy signature. With regard to the photocopied signature, I will not render an opinion.

   This photocopy of a signature is not suitable for meaningful handwriting comparison, because based on my training and experience a limited signature or a limited writing can be manipulated.

Q. All right. Now, with respect to the - -

   MR. FRANCIS:     No further questions, your Honor.

(Joint Appendix, Volume II at 493-494).

   Trial counsel called Appellant to testify and immediately, and without any background questioning, went directly to the issue who wrote the words "Cousin Melvin Smith" in Government's Exhibit 1.

   MR. FRANCIS:     I show you what has been marked as Government's Exhibit Number 1.

BY MR. FRANCIS:

Q. Have you ever seen that document before, or that exhibit before?

A. I have.

46

Q. Could you open it and look in the back cover?

A. Yes.

Q. Did you, Mr. Petersen, sign that document?

A. No, I did not.

Q. Do you recall yesterday when the FBI forensic person showed us this exhibit over here to your right - - to your left, I'm sorry?

A. Yes, I remember.

Q. Now, do you see that document or that name where it says "questioned," on my right?

MR. FRANCIS:        Your Honor, may I - -

BY MR. FRANCIS:

Q. Can you see?

A. Yes, I can see.

THE COURT:        All right. Continue.

                                                    (Government's    Exhibit
                                                    No. 31 referenced.)

BY MR. FRANCIS:

Q. Can you see this document, sir - -

A. Yes.

Q. - - Government Exhibit 31?
        Did you sign that ?

A. No, I did not.

(Joint Appendix, Volume III at 533-534).

47

Of course, Appellant went on to deny having any criminal transactions with Ms. Lynch.  In fact, Appellant denied having any contact whatsoever with the alleged "Cousin Melvin Smith".

> Q. Now, did there come a time during the afternoon hours that you - - or any time, that you made a call to Atlanta?
>
> A. Yes, I did.
>
> Q. Now, was that the first call you had made to Atlanta?
>
> A. No, it was not.
>
> Q. When did you make your first call to Atlanta?
>
> A. The first call I made to Atlanta was 8:04, that morning of the 10th.
>
> Q. Now, was that before or after you had spoken to Ms. Lynch?
>
> A. That's after I had spoken to Ms. Lynch.
>
> Q. And why did you make that call at 8:04 in the morning on the 10th.
>
> A. Because Ms. Lynch had instructed me to call Mr. Melvin Smith, as she said, and instruct him that she might be coming to Atlanta that day.
>
> Q. Now, did you ever speak to a Mr. Smith - - this so-called Mr. Smith?
>
> A. Never, ever.
>
> Q. Did you make a call to that number?
>
> A. Yes, I did.  I made many calls to that number.  I was never able to get in contact.

(Joint Appendix, Volume III at 537).

48

o SHOW     .USE

performance at trial fell short of the standard for the effective

ounsel because it appears that counsel was not aware that this

■ in United States v. Velasquez, 64 F.3d 844 (3d Cir.1995),

al court's exclusion of the testimony of a proffered expert critic in

writing analysis.   Preparation for the recognized harm Agent

  bring to Appellant's case would have required trial counsel to

l of such expert critic in the field of handwriting analysis to

whelmingly damaging testimony of Agent Haywood.

= in Government of the Virgin Islands v. Weatherwax, 33 V.I.

– 1996), held that if a movant made out a *prima facie* case of

■nce of counsel at trial, the government must then be afforded

o question trial counsel relative to his failure whether he

e basis of "sound trial strategy" (quoting Strickland v.

J.S. 668, 689 (1984)).

■ed that Appellant will be able to make out a *prima facie* case of

ce of counsel by showing that trial counsel failed to consider

Velasquez and thereby failed to prepare for the extremely

■y of Agent Haywood, which consequently went unchallenged.

of sufficient gravity to undermine the fundamental fairness of

■nd to suggest that a new trial is necessary to ensure that

 a fair trial." Nealy v. Cabana, 764 F.2d 1173, 1180 (5th Cir.

estigate alibi defense amounted to ineffective assistance of

49

Counsel's performance at trial fell short of the standard for the effective assistance of counsel because it appears that counsel was not aware that this Court's decision in United States v. Velasquez, 64 F.3d 844 (3d Cir.1995), reversing the trial court's exclusion of the testimony of a proffered expert critic in the field of handwriting analysis. Preparation for the recognized harm Agent Haywood would bring to Appellant's case would have required trial counsel to seek the counsel of such expert critic in the field of handwriting analysis to impeach the overwhelmingly damaging testimony of Agent Haywood.

This Court in Government of the Virgin Islands v. Weatherwax, 33 V.I. 393, 402 (3d Cir.1996), held that if a movant made out a *prima facie* case of ineffective assistance of counsel at trial, the government must then be afforded the opportunity to question trial counsel relative to his failure whether he proceeded on the basis of "sound trial strategy" (quoting Strickland v. Washington, 466 U.S. 668, 689 (1984)).

It is submitted that Appellant will be able to make out a *prima facie* case of ineffective assistance of counsel by showing that trial counsel failed to consider the teachings of Velasquez and thereby failed to prepare for the extremely damaging testimony of Agent Haywood, which consequently went unchallenged. This failure "were of sufficient gravity to undermine the fundamental fairness of the proceedings and to suggest that a new trial is necessary to ensure that [Appellant] receives a fair trial." Nealy v. Cabana, 764 F.2d 1173, 1180 (5th Cir. 1985) (failure to investigate alibi defense amounted to ineffective assistance of

RESPONSE TO ORDE  O SHOW CAUSE
*USA v. Allan Peterson*
Case No. 96-7477
Page 11

counsel where government's strongest evidence was the testimony of an alleged accomplice).

The undersigned therefore will file a 28 U.S.C. § 2255 motion in the trial court for a hearing as to the effectiveness of trial counsel's representation at trial.

Counsel for Appellee, Mark Patterson, Esq., Assistant United States Attorney, has no objection to the voluntary dismissal of the within appeal.

WHEREFORE, it is respectfully requested that the within appeal be dismissed as Appellant, through the undersigned counsel cannot discern any meritorious issues for appeal while the undersigned counsel, based on representations by Appellant and his independent review of the trial records, believes that there is a substantial probability that counsel's trial performance fell below the requisite standards and that Appellant may consequently be entitled to a new trial after an evidentiary hearing in the trial court.

Dated: 3 April 1997

Respectfully submitted:

Michael A. Joseph, Esq.
52A Company Street, Suite 1
Christiansted, St. Croix
U.S. Virgin Islands, 00820
Telephone: (809) 773-9650
Fax: (809) 773-9703

*50.*

RESPONSE TO ORDE.    O SHOW CAUSE
*USA v. Allan Peterson*
Case No. 96-7477
Page 12

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this _3rd_ day of April, 1997, I caused a true and exact copy of the foregoing RESPONSE TO ORDER TO SHOW CAUSE AND MOTION TO DISMISS THE WITHIN APPEAL to be mailed, postage prepaid to:

MARK PATTERSON, ESQ.
UNITED STATES ATTORNEY
U.S. Attorney's Office
Federal Building and U.S. Court House
5500 Veterans Drive Ste. 260
St. Thomas, V.I. 00802-6424

Counsel for Appellee
United States of America

ALAN D. SMITH, ESQ.
HODGE & FRANCOIS
1340 Taarneberg
St. Thomas, V.I. 00802

Counsel for Appellant
Melvin Marvin Thomas

LEONARD B. FRANCIS, JR., ESQ.
4A Dronningens Gade, Box 8838
St. Thomas, Virgin Islands 00801

FCI Ray Brook
Allan Peterson, Delaware Unit
No. 03533-094
P.O. Box 903
Ray Brook, New York 12977

Appellant

51.

IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

UNITED STATES OF AMERICA )
)
                    Plaintiff, ) Criminal No. 1995-73
)
    v. )
)
ALLAN PETERSEN, )
)
                    Defendant. )
)

## ORDER REQUIRING DEFENSE COUNSEL TO RESPOND

This Court has received two letters from the defendant.  One
January 7, 1998, the defendant requested that counsel, Michael
Joseph, Esq., be relieved from representing him in his appeal.
In the same, he requested that this Court direct counsel to
forward his files to him.  In his second letter he again repeats
his request that Attorney Joseph not represent him and requests
that the Court extend the time for his filing of a 28 U.S.C.
§ 2255 motion.

Upon review of the documents filed by defendant, it appears
that the defendant has dismissed his appeal to the Third Circuit
Court of Appeals.  In such a case, defendant is no longer
represented by counsel and does not need him to file a 2255
motion since he has indicated that he intends to file it pro se.
Second, the Court cannot extend the time period for filing of the
writ of habeas corpus.  Lastly, regarding the request for files
from counsel; the request for withdrawal; and the Court's lack of
knowledge regarding the stage of defendant's appeal, if any, the

PLAINTIFF'S
EXHIBIT
3
Gov't

USA v. Petersen
Crim. No. 1995-0073
Order Requiring Response
Page 2

Court will require that counsel respond to the defendant's

letters. Accordingly, it is hereby

   ORDERED that by February 27, 1997, Michael Joseph, Esq.,

respond to the defendant's request that he withdraw from

representation in the appeal matter and the defendant's request

for counsel to forward files to him; and it is

   ORDERED that the Court having no authority to extend the

time for defendant to file a 28 U.S.C. 2255 motion, that request

is DENIED.


DATED: FEBRUARY  17 , 1998                    _____
                                              GEOFFREY W. BARNARD
                                              U.S. MAGISTRATE JUDGE

ATTEST:
Orinn Arnold
Clerk of Court

By: _____
        Deputy Clerk


       Michal Joseph, Esq.

    Allan Petersen
    Reg. No. 03533-094
    P.O. box 903
    Raybrook, NY 12977
    (Legal Mail - open in presence of inmate only)

    Judge Barnard
    Mrs. Jackson



ALLAN PETERSEN
REG. # 03533-094
P.O. BOX 903
RAYBROOK, NY 12977

23 DECEMBER '97


MR. MICHEAL A. JOSEPH, ESQ.
52A COMPANY STREET, SUITE 1
CHRISTIANSTED, ST. CROIX
U.S. VIRGIN ISLANDS, 00820


Re: U.S.A. V. ALLAN PETERSEN, # 95-CR-00073-3; Appeal # 96-7477


Dear Mr. Joseph,

I anticipate you have received my previous correspondence requesting you forward any and all papers of matters relative to my case.

Accordingly, I now write to emphasize my request and specify the letter trial counsel, (Leonard B. Francis Jr., ESQ.), sent me concerning a particular juror; the complete trial transcript; the exhibit concerning the government witnesses signature on the note; Presentencing report; indictment; grand jury minutes; the minutes of the jury selection; and any and all other materials you may possess.

I trust my request will be handled in a prompt manner, as you have an understanding of the serious and urgent nature of my need for the above records in regard to preparation of my 28 U.S.C. § 2255 motion.

In addition, because of the recently enacted amendment to § 2255 under the "Antiterrorism Effective Death Penalty Act" limiting the filing time for § 2255 motions to (1) one year. And the fact that such applies to my matter, as (1) one year from withdrawal of my direct appeal in the Third Circuit. Which would expire in April 1998.

Therefore, because I find myself within 4 months of that expiration date, pursuant the one year deadline, and thus forfeit my being able to proceed under 28 U.S.C. § 2255, I have taken critical exception to the fact of your having allowed so much time to elapse without any action towards filing my § 2255 motion. I therefore respectfully request your resignation from any further representation on my behalf and request a 90% refund of the money paid to retain you.

I anticipate receipt of the herein requested shortly, and that you reach my parents for arrangements for refund of the money paid to retain you from my parents, ($6,000).

53

Page 2 letter 12/23/97 letter to
Attorney Micheal A. Joesh.

Please forward the herein requested to the address listed
above.

Respectfull submitted,

ALLAN PETERSEN

cc/ clerk of court
file

54

OFFICE OF THE CLERK

## UNITED STATES COURT OF APPEALS

P. Douglas Sisk
   Clerk

FOR THE THIRD CIRCUIT
21400 United States Courthouse
601 Market Street
Philadelphia PA 19106-1790

Telephone
215-597-1896

April 10, 1997

Michael A. Joseph, Esq.
52A Company Street
Suite 1
Christiansted, St. Croix
USVI,   00820

RE: Docket No. 96-7477
    USA vs. Petersen
    D. C. No. 95-cr-00073-3

Dear Counsel:

    Receipt is acknowledged on 4/4/97 of Repsone to order to show cause and motion for voluntary dismissal of the within appeal.

    Please be advised that in a direct criminal appeal appellant's written consent to the dismissal of the appeal is required for filing with the motion. Accordingly, please secure Mr. Peterson's written consent to the dismissal of his appeal within 14 days of the date of this letter and forward same to this office for filing with the above motion.

    Thank you for your prompt attention to this matter.

Very truly yours,
P. DOUGLAS SISK, Clerk

By:  Christina T. Cook
    Case Manager

cc:

    Mark Patterson, Esq.
    Mr. Allan Peterson

EXHIBIT-K

55

 

# MICHAEL A. JOSEPH
### Attorney at Law

52 A Company Street, Suite 1
Christiansted, St. Croix, U.S.V.I. 00820

Telephone: (809) 773-9650
Telefax:    (809) 773-9703

14 April 1997

Mr. Allan Petersen
No. 03533-094, Delaware Unit
P.O. Box 903
Ray Brook, New York  12977

Re:    USA v. Allan Petersen
       Case No. 96-7477

Dear Allen:

Enclosed please find, the clerk's request that I obtain your written consent to go along with the Motion.  It is a pleasing response from the Court, since it suggests that the motion is otherwise proper in form and substance.  The record bore out your instincts that you were not properly represented, and your consent to have the appeal dismissed followed immediately by a Section 2255 Motion in the District Court is, based on my extensive appellate experience, the best approach in your attempt to obtain justice in your case.

Please forward today a short letter referencing the docket number, etc. to the Court indicating your consent to the dismissal of the appeal as presented to the Court. You can call me toll-free at 1-888-VI-1-ATTY (1-888-841-1889).

Cordially,

Michael A. Joseph, Esq.

MAJ:err

**EXHIBIT-K**

ALL-STATE LEGAL®
PLAINTIFF'S
EXHIBIT
5

56

OFFICE OF THE CLERK

# UNITED STATES COURT OF APPEALS

P. Douglas Sisk
    Clerk

FOR THE THIRD CIRCUIT
21400 United States Courthouse
601 Market Street
Philadelphia, PA 19106-1790

Telephone
215-597-1896

March 14, 1997

Michael A. Joseph, Esq.
52A Company Street
Suite 1
Christiansted, St. Croix
USVI,    00820

Re: USA vs. Petersen
    96-7477

    Enclosed herewith is copy of Show Cause Order filed today in the above-captioned case.

    You are urged to give this matter your immediate attention.

Very truly yours,
P. DOUGLAS SISK, Clerk

By:  Christina T. Cook
Case Manager

Enclosure:
    Show Cause Order
cc:
      Mark Patterson, Esq.

EXHIBIT-I

57



UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT


No. 96-7477


USA

vs.

Petersen

Allan Petersen, Appellant

(Virgin Islands Criminal No. 95-cr-00073-3)


R U L E   T O   S H O W   C A U S E

TO: Michael A. Joseph, Esquire, Court-Appointed Counsel


It appearing that this appeal has not been timely prosecuted in that counsel failed to file brief for appellant and the appendix.

It is ORDERED that **Michael A. Joseph** , Esquire, show cause in writing, original and three (3) copies, together with service upon all interested parties, on or before **4/3/97**, why said counsel should not be subject to sanctions for delay in the prosecution of the within appeal.

This Order to Show Cause is made returnable before a panel of this Court. You will be advised if your physical presence is required on a date specified by the Court.


For the Court,

*P. Douglas Sisk*

Clerk


Date: March 14, 1997

58

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 96-7477
USA
vs.
Petersen

Allan Petersen,
Appellant

BRIEFING AND SCHEDULING ORDER

It is ORDERED that the brief for the appellant and the appendix shall be filed and served on or before 2/7/97;

It is FURTHER ORDERED that the brief(s) for appellee(s) shall be filed and served within  twenty-one (21) days of service of appellant's brief;

It is FURTHER ORDERED that a reply brief, if any, shall be filed and served within fourteen (14) days of service of appellee's brief;

It is FURTHER ORDERED that in the event of default by the appellant in filing the brief and appendix, at the time directed, the appeal may be dismissed forthwith without further notice;

It is FURTHER ORDERED that if the appellee fails to file a brief within the time directed by this order, the matter will be listed on appellant's brief only and the appellee may be subject to such sanctions as the court deems appropriate.

For the Court,

*P. Douglas Sisk*
------------------------------------
P. DOUGLAS SISK, Clerk

Date: 1/8/97

59.